Opinion by
Hoeeman, J.,
This is an appeal from appellant’s adjudication as a juvenile delinquent. Appellant contends that the lower court erred in denying his motion to suppress, which was duly filed in the Family Division of the Court of Common Pleas.
On January 3, 1972, Officers Boberts and Stevenson were patrolling the area of Woodstock and Norris Streets in an unmarked police vehicle. According to Officer Boberts’ testimony, the officers were assigned to that area “. . . specifically to try to curb the number of gang shootings which had taken place in the area, and also the shooting of residents and bystanders to these gang activities.” At approximately 8:55 p.m. the officers were proceeding west on Norris Street, approaching Woodstock Street, when they observed three *224 young males, including appellant, going north on Woodstock from Norris. Officer Roberts testified that the police vehicle was brought to a stop and both officers approached the three males on foot “for investigation.” The officer then stated that “the defendant appeared to move away from the other two boys.” The officer then called to appellant, and when appellant approached the officer, appellant was pulled by his coat and belt. The officer stated that he felt an object inside appellant’s left coat pocket. Officer Roberts then “frisked” appellant and seized a revolver.
The lower court, in dénying appellant’s motion to suppress the revolver, never reached the merits of the allegation that there had been an illegal search and seizure, rather he held that “a broad application of this phase of ‘Due Process’ in juvenile proceedings does damage and harm to the budding character of the child. Unless the rights of the child have been blatantly and flagrantly abused the filing of a Motion to Suppress is ill advised for it places a pale technicality in a position of priority over the true purpose of the Court which is the salvation of the child.”
I
The Commonwealth in its brief argues that we do not have to reach the question of whether Fourth Amendment rights must be applicable in juvenile proceedings, because appellant’s Fourth Amendment rights were not violated by the seizure and subsequent search of his person. We are of the opinion, however, that appellant’s Fourth Amendment rights have been violated.
It is clear that a policeman may in appropriate circumstances and in an appropriate fashion approach a person on the street for the purpose of investigating possible criminal activity. However, as our Supreme *225 Court held in Commonwealth v. Hicks, 434 Pa. 153, 160, 253 A. 2d 276 (1969), “[F]or ... a precautionary seizure and search to be legitimate . . . [t]he police must prove that specific conduct of the seized person, observed by them, justified and made reasonable their belief that criminal activity was afoot and the seized person was armed and dangerous.”
As stated by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 16 (1968), and quoted with approval in Commonwealth v. Hicks, supra at 157, “It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person. And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person’s clothing ... is not a ‘search’ . . . .”
In the instant case the police officers, when seizing appellant, had no information that he was committing any illegal acts, or that he was armed and dangerous. The officers had no information that either appellant or his companions were members of a gang or were involved in a gang incident. At the time appellant was seized, there was nothing in appellant’s conduct from which the officer could reasonably infer that criminal activity was afoot and that appellant was armed. Appellant’s failure to immediately heed the officer’s command to stop was not sufficient to justify the officer’s touching and holding of appellant. Commonwealth v. Clarke, 219 Pa. Superior Ct. 340, 280 A. 2d 622 (1971).
The Commonwealth contends that the recent United States Supreme Court case of Adams v. Williams, 407 U.S. 143 (1972), supports its position that the police had ample reason to seize appellant. Williams, however, is not apposite to the facts in the instant case. In Williams, the police officer was alone on patrol duty at about 2:15 a.m. An unnamed person, whom the officer knew from prior encounters, approached the *226 officer and informed him that a specific individual seated in an automobile was carrying narcotics and had a gun at his waist. The officer approached the car, tapped on the window, and asked Williams, the sole occupant of the car, to open the door. Williams rolled down the window, and the officer reached into the car and removed a gun from Williams’ waistband. After being arrested for unlawful possession of the pistol, the police discovered narcotics in Williams’ possession. This search of Williams was declared valid by the Supreme Court.
In the instant case the police had no knowledge that there was a crime being committed in the area, they received no tip from any individual as to any illegal activity, and had nothing more than an unsupported belief that appellant was engaged in criminal activity. If the policemen were constitutionally justified in searching appellant under these circumstances, then all juveniles would be subject to search on suspicion alone. See Commonwealth v. Berrios, 437 Pa. 338, 342, 263 A. 2d 342 (1970). Such authority would not be consonant with the Fourth Amendment protection against unreasonable searches and seizures, and it would not be consonant with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We hold, therefore, that the search and seizure of appellant was in violation of his rights under the Fourth Amendment.
II
The lower court never considered the merits of appellant’s motion to suppress because it believed that the Fourth Amendment and the exclusionary rule did not apply to juveniles. We cannot agree with the lower court.
*227 It should be noted at the outset that the Family Division of the Court of Common Pleas of Philadelphia has created a specific procedure for the filing of a, motion to suppress evidence.[1] These motions are uniformly heard within the Family Division of the Court of Common Pleas and are decided by the judge prior to the case in chief. In the present case a motion to suppress was filed by appellant’s counsel, accepted by the clerk of court, and heard prior to trial.
The exclusionary rule has been adopted by the federal courts and applied to the states iu order to prevent police activity in violation of the Fourth Amendment. In the recent case of Commonwealth v. Cephas, 447 Pa. 500, 510-511, 291 A. 2d 106 (1972), Mr. Justice Eagen, speaking for our Supreme Court, stated that “[o]ne must be mindful that one of the main functions to be served by excluding this testimony is to deter future violations of the Fourth Amendment and other constitutional guarantees, and to remove the profit motive from unlawful searches. [Footnote omitted] If deterrence of improper police conduct is to be effective, the exclusionary rule must be strict.”
*228 Other jurisdictions which have considered the question of applying the exclusionary rule to juveniles have looked to the reasoning behind the Fourth Amendment guarantees. In State v. Lowry, 95 N. J. Super. 307, 314, 230 A. 2d 907, 910 (1967), the New Jersey Superior Court stated that “[t]he historical development clearly indicates that the [exclusionary rule] is not only a basic right to all persons to privacy, security and liberty, whether accused of a crime or not, but is fundamental to the concept of due process, a principle precluding adjudications based on methods that offend a sense of justice and one that must endure if our society is to remain free. To insure a fact-finding process which at least measures up to the essentials of fair treatment, [citation omitted], the constitutional safeguard enunciated in the Fourth Amendment must be applicable to juveniles.”[2] We are in full agreement with this statement, for we can find no state interest in denying a juvenile as strong a right as that of an adult to the protections against overreaching police practices which violate a fundamental state policy.[3]
*229 The Commonwealth argues that the recent United States Supreme Court case of McKeiver v. Pennsylvania, 403 U.S. 528 (1971), which held that a state is not required to afford a juvenile a jury trial, stands for the proposition that the rights presently applicable to a juvenile proceeding are sufficient without further extension. It should be noted that a juvenile is not permitted to have a jury trial in Pennsylvania because our courts have held that the orderly administration of the juvenile justice system would be impeded if juveniles could demand a jury trial. McKeiver Appeal, 438 Pa. 329, 265 A. 2d 350 (1970) ; Commonwealth v. Johnson, 211 Pa. Superior Ct. 62, 234 A. 2d 9 (1967).
In the instant case, however, we are not dealing with a procedure which will affect the orderly administration of the juvenile courts. The right not to be subject to unreasonable searches and seizures should not be restricted to any particular class of citizens.
Therefore, the order of commitment is reversed, and the record is remanded for a new adjudicatory hearing.
Weight, P. J., Watkins and Jacobs, JJ., would affirm on the opinion of the court below.

 The following rule was promulgated September 11, 1969, by the Honorable Frank ,T. Montemtjro, Administrative Judge of the Family Court Division of the Common Pleas Court of Philadelphia County: “There shall be no preliminary listings of motions for suppression of evidence alleged to have been obtained in violation of the juvenile’s constitutional rights, prior to the adjudicatory hearing.
“If counsel for the juvenile desires a preliminary determination of a suppression motion, he shall serve written notice at least five days before the date fixed for an adjudicatory hearing upon the District Attorney and upon the clerk in charge of juvenile court listings.
“The Judge assigned to hold the adjudicatory hearing shall make a preliminary determination. If the motion to suppress is denied, he shall proceed with the hearing.”

 Other jurisdictions which have considered this question have uniformly applied the Fourth Amendment to juveniles. See Cooley v. Stone, 414 F. 2d 1213 (D.C. Cir. 1969), Brown v. Fauntleroy, 442 F. 2d 838 (D.C. Cir. 1971), In re Baker, 18 Ohio App. 2d 276, 248 N.E. 2d 620 (1969), In re Marsh, 40 Ill. 2d 53, 237 N.E. 2d 529 (1968), In re Robert T., 8 C.A. 3d 990, 88 Cal. Rptr. 37 (1970), In re Ronny, 242 N.Y.S. 2d 844 (1963), In re Williams, 267 N.Y.S. 2d 91 (1966), Urbasek v. People, 76 Ill. App. 2d 375, 222 N.E. 2d 233 (1966), In re Morris, 290 Ohio Misc. 71, 278 N.E. 2d 701 (1971), People v. Hughes, 123 Ill. App. 2d 115, 260 N.E. 2d 34 (1970). The only reported Pennsylvania case considering this issue, A.B.C., Alleged Delinquent, 50 Pa. D. & C. 2d 115 (1970), held the Fourth Amendment applicable to juveniles.

 See our Supreme Court’s opinion in Johnson Appeal, 445 Pa. 270, 284 A. 2d 780 (1971), which involved an adjudication of delinquency. There the Supreme Court stated: “We also feel that there is little if any reason for relaxing in non-jury criminal trials, the exclusionary rule that is applied to evidence of defendant’s prior *229 criminal record when a jury is the trier of fact. See Levin and Cohen, The Exclusionary Rule in Nonjury Criminal Cases, 119 U. Pa. L. Rev. 905 (1971).” 445 Pa. at 276.