Commonwealth *v.* Stratton, Appellant.

92

Argued March 20, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John Bartle*, Assistant Defender, with him *John W. Packel*, Assistant Defender, and *Vincent J. Ziccardi*, Defender, for appellant.

*James Garrett*, Assistant District Attorney, with him *David Richman*, *Mark Sendrow*, and *Steven H.*

*Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., December 11, 1974:

This is an appeal from an order of the Court of Common Pleas affirming the judgment of sentence of the Municipal Court of Philadelphia finding the defendant, Gilbert Stratton, after a trial without a jury, guilty of violation of the Uniform Firearms Act and carrying a concealed deadly weapon. He was sentenced to two (2) years probation. The Writ of Certiorari was granted for review of the denial of the defendant's pre-trial motions before the Municipal Court and after hearing the action of the Municipal Court was affirmed and the certiorari dismissed.

His appeal is based on the alleged illegality of the seizure of the firearm. The defendant claims that the court below erred when it admitted the firearm taken from him into evidence on the ground that the seizure was constitutionally infirm because the defendant had not engaged in any conduct leading reasonably to the conclusion that he was involved in criminal activity.

At the trial, a Philadelphia police officer testified that he observed the defendant inside the doorway of a laundromat, which was closed at the time, which was at 12:08 A.M. on May 25, 1973. The doorway was approximately twelve (12) feet from the curbside and there was a twelve (12) foot walkway leading from the pavement to the door of the laundromat. The defendant, upon observing the officer, came out of the walkway, and proceeded at a fast pace to walk away from the scene.

The officer stopped the defendant and frisked him whereupon he discovered that the defendant was carrying an unloaded .32 caliber revolver in his right coat

pocket and .32 caliber cartridges in his left coat pocket. He took the defendant back to the laundromat doorway, but discovered no tampering with the door.

The sole question in this case is whether the officer had sufficient cause to stop and frisk the defendant under the above recited facts. Good police work under these circumstances would demand an investigation and under the circumstances a stop and frisk.

In *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the United States Supreme Court enunciated the principle that a warrantless search may be made of a suspect's outer clothing when incident to a lawful arrest. The policy of this rule is to protect police officers in the performance of their duties. Our Supreme Court of Pennsylvania set the standard for determining whether seizures are lawful in such situations in the case of *Commonwealth v. Hicks,* 434 Pa. 153, 158-159, 253 A. 2d 276 (1969). In *Hicks,* supra, the court said: "Even if probable cause to arrest is absent, the police officer may still legitimately seize a person, such as Hicks was seized in this case, and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous."

Although the standard for a "stop and frisk" situation is not as demanding as that necessary for probable cause to arrest, the police officers must be able to articulate facts which aroused their suspicion and a mere allegation that a suspect engaged in "suspicious" conduct is not sufficient to justify a "stop and frisk." *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A. 2d 914 (1973). The issue in the case at hand is whether the

facts articulated by the police officer were sufficient to arouse his suspicions that criminal activity was afoot and that the defendant was a part of it.

There is no question that flight alone, even upon seeing a police officer, would not be sufficient to justify stopping and searching the defendant. *Commonwealth v. Jeffries,* supra. Nor would we hold that a person's presence near the doorway of a store alone constitutes sufficient grounds for an officer to reasonably conclude that criminal activity is afoot. However, in this case we have the fact that the defendant was seen by officers at 12:08 A.M. in the doorway of a store which was closed and that to get to the position the defendant had to remove himself from the main sidewalk area and walk twelve (12) feet on a walkway and that he moved quickly out of that area upon observing the approach of the police. These facts, taken together, while they may not amount to probable cause to arrest, certainly are sufficient to arouse a reasonable suspicion that the defendant may be engaged in criminal activity.

We do not feel that the fact that the police were unable to detect any evidence of tampering with the door is determinative of this issue. It would be the height of absurdity to conclude that the police officer should have alighted from his vehicle, walked up the walkway to check the door, decided whether his suspicions were aroused and only then pursued the defendant, all of this occurring as the defendant was removing himself hurriedly from the scene.

We have carefully examined the cases cited by the defendant in support of his contention and are convinced that none of them apply to the facts in this case. Under the facts set forth above, we hold that the officer's suspicions were reasonably aroused by the conduct of the defendant under the circumstances and that the exigencies of the situation as well as

good police practice justified the stopping and frisking of the defendant.

The order of the Court of Common Pleas is affirmed.

JACOBS, J., concurs in the result.

––––––

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was sentenced to a term of two years probation following his conviction in Municipal Court for a violation of the Uniform Firearms Act. He filed a petition for a writ of certiorari in the Common Pleas Court of Philadelphia challenging the legality of the seizure of the firearm. The writ was subsequently dismissed and this appeal followed:

At the suppression hearing in Municipal Court, Officer John Madden was the only witness. He testified that on May 25, 1973 at approximately 12:00 a.m. he observed appellant standing in the doorway of a closed laundromat on Lancaster Avenue in Philadelphia. When the police officers approached in a patrol car, appellant walked away "hurriedly". Officer Madden and his partner stopped appellant and frisked him, finding an unloaded .32 caliber revolver in appellant's right coat pocket and .32 caliber cartridges in his left.

Officer Madden testified that he and his partner suspected appellant of attempting to burglarize the laundromat, but did not specify any acts upon which the suspicion was based. The officers did not see him tampering with the door or in any way attempting to gain entry. Subsequent inspection of the door disclosed no indication that any attempt to gain entry had been made. On these facts, I believe that appellant's fourth amendment rights were violated and that the court below erred in refusing to suppress the evidence.

A limited stop and frisk may be conducted even if probable cause for arrest is lacking "if the police officer observes unusual and suspicious conduct on the part of

the individual seized which leads [the officer] reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." *Commonwealth v. Hicks*, 434 Pa. 153, 158-159, 253 A. 2d 276 (1969). Suspicions not based upon specific acts or circumstances are insufficient to justify such an intrusion. Rather, "the police must be able to point to articulated facts which give rise to the reasonable belief that criminal activity is afoot." *Commonwealth v. Jeffries*, 454 Pa. 320, 325, 311 A. 2d 914 (1973); *Commonwealth v. Berrios*, 437 Pa. 338, 341, 263 A. 2d 342 (1970).

In the instant case, there are no "articulated facts" to indicate that appellant was engaging or about to engage in criminal activity. Surely, appellant's mere presence near a doorway on a public sidewalk does not give rise to an inference that criminal activity is afoot. To sustain a "stop and frisk" on these facts would mean that anyone who stopped to gaze into a store window or door late at night would be susceptible to a search.

Nor does the fact that appellant turned and walked quickly away as the patrol car approached render his conduct any more suspicious or indicative of criminal activity. Even if this conduct is considered to be "flight", it would not, absent other indicia of criminal activity, be sufficient to justify the intrusion. *United States v. Margeson*, 259 F. Supp. 256 (E.D. Pa. 1966); *Commonwealth v. Pegram*, 450 Pa. 590, 301 A. 2d 695 (1973); *Commonwealth v. Jeffries*, supra; see *Harvey Appeal*, 222 Pa. Superior Ct. 222, 295 A. 2d 93 (1972). I must conclude, therefore, that the intrusion was not based on any reasonable suspicion of criminal activity, and that the seizure was illegal and the evidence obtained thereby should have been suppressed.

The judgment of sentence should be reversed and a new trial granted.