**UNITED STATES of America**

v.

**Dominic CALAFATI.**

**Crim. No. 82–109.**

United States District Court,
E.D. Pennsylvania.

Aug. 19, 1983.

Lynell N. Staton, Jeffery W. Whitt, Philadelphia, Pa., for United States.

Mark L. Alderman, Philadelphia, Pa., for defendant.

OPINION *

LOUIS H. POLLAK, District Judge.

In this case we are considering today a motion for a new trial in which two particular grounds have been urged, one in argument, and both in brief.

The first of the two claims is that it was error for this court to decline to order a mistrial when requested to do so after the admission into evidence of the guilty plea of alleged co-conspirator Tyahla. No contem-

---

10. Neither party has filed a motion concerning the counterclaim.

* This opinion is a modestly edited version of the transcript of my bench opinion of April 11, 1983. To the extent they differ, this version, and not the bench opinion as transcribed, constitutes my ruling.

poraneous objection to admission of the guilty plea was taken.

The second ground of the motion for a new trial covered in brief, but not at oral argument today, was that government counsel argued improperly to the jury in closing through several uses of the phrase, "I submit," or, "I submit to you", phrasings which in defendant Calafati's view were the equivalent of personal endorsements by government counsel of the line of testimony and inferences to be drawn therefrom to which government counsel was addressing their attention, such endorsements being prohibited.

There are other claims made by Mr. Calafati which have not been addressed specifically today which go to other aspects of the long and complex trial. I won't canvass those this morning. Suffice it to say, it was a trial that presented a variety of difficulties as it went forward, and those difficulties persisted until the closing arguments.

I found it necessary to intervene twice to inform the jury that I did not concur in government counsel's recollection as expressed in closing argument of the testimony.

What I want to focus on this morning, however, are the claims which have been addressed this morning in argument and brief. The focus of the argument has been on the claim first referred to, namely, that it was error of an irretrievable nature to have sanctioned the admission into evidence at the outset of the direct examination of Mr. Tyahla of Mr. Tyahla's plea of guilty to Count 1 of the indictment, the conspiracy count.

I say that the crux of the argument is that this was an irretrievable error for we have a situation in which, as I've already noted, no contemporaneous objection was made to the inquiry to Mr. Tyahla about his guilty plea which came at the outset of Mr. Tyahla's testimony, and it is also the case that the following day I advised the jury that they were not to consider the guilty plea as itself evidentiary of guilt of the defendants, including Mr. Calafati, who were on trial.

During the charge to the jury, which came at the close of a trial of considerable length, I advised the jury once again that Mr. Tyahla's plea of guilty was not in itself evidentiary of guilt on the part of the defendants whose cases were before the jury.

So the question is two-fold. The first part of the question is whether the guilty plea should have been admitted for any purpose; the second part of the question is whether if the guilty plea was admitted for any purpose, or for no purpose, the cautionary instructions given by the court, both in the course of trial and as part of the charge, were sufficient to preclude the jury fastening on Mr. Tyahla's guilty plea as in some way evidentiary of the guilt of Mr. Calafati and/or his co-defendants, one of whom was convicted and one of whom was acquitted.

The proposition that Mr. Tyahla's plea of guilty to a conspiracy should not have come into this case at all rests principally on the Third Circuit's advise in *United States v. Gullo*, 502 F.2d 759, 761 (3d Cir.1974), to the effect that the general rule in this circuit that while the evidence of a guilty plea by a co-conspirator is not admissible, citing *United States v. Toner*, 173 F.2d 140 (3d Cir. 1949), under some circumstances curative instructions are adequate to remove the harm where the pleas are to substantive counts.

The government's position, namely, that there are instances in which a guilty plea to a conspiracy charge is admissible for purposes other than that of substantive evidence of guilt on the part of the alleged co-conspirators, rests on the *Toner* case itself cited by the court of appeals in *Gullo*, and on the court of appeals opinion in *Bisaccia v. Attorney General*, 623 F.2d 307 (3d Cir.1980) *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980).

In *Toner*, 173 F.2d at 142, Judge Goodrich, on behalf of the court of appeals, concluded that the Judge's curative instruction with respect to the proper use of a guilty plea was insufficient, and hence, the conviction was reversed. That determination certainly carries with it the implication

that a proper instruction would have saved the situation.

In *Bisaccia,* 623 F.2d at 312, Judge Higginbotham, speaking for the court of appeals, said that, "It is well settled in this circuit that use of a co-conspirator's guilty plea as a substantive proof of a defendant's complicity in a conspiracy without cautionary instruction is not admissible as evidence." For that purpose, Judge Higginbotham cited *Toner,* 173 F.2d at 142, where Judge Goodrich pointed out the fault in the instruction there given.

Judge Higginbotham's language in *Bisaccia,* which of course was decided after *Gullo,* certainly supports the government's view that there are appropriate uses of a co-conspirator's guilty plea, and where such an appropriate use is pursued, then any concerns, such as those posed in *Toner* and in *Gullo,* are taken care of by a proper cautionary instruction.

■ In this case, Calafati does not take issue with the sufficiency of the cautionary instruction, or, indeed, the multiple cautionary instructions.

Calafati does, however, quarrel with their effect, pointing out that the first such instruction did not come until a day after the guilty plea had first been testified to.

Further, it is contended that this is not an instance in which the guilty plea was introduced into evidence for a proper purpose. It is Calafati's view that proper purposes would include (1) the use of a guilty plea itself by way of impeaching subject to an appropriate instruction, and/or, (2) the use of a guilty plea by the government as rehabilitation of the witness' credibility after that had been put in issue.

It is Calafati's position that in this case the introduction of Mr. Tyahla's guilty plea came at a time when it served no appropriate purpose. In point of fact, it was the first matter with respect to which Mr. Tyahla was examined at the initiation of his direct testimony.

I think it is also the case, which may bear somewhat on the fact it was not objected to by counsel contemporaneously, that the government's intention to examine Mr. Tyahla about his guilty plea was not flagged in advance of the trial so that defense counsel and the court were aware of the government's intention.

This is not said with a view to excusing counsel's failure to object contemporaneously, but with a view to trying to develop the context and to indicate what would seem a likely factual explanation.

I have considered whether there were proper uses for the introduction of Mr. Tyahla's guilty plea at the time that the government pursued that inquiry. My judgment is that there were not; that is to say, my judgment is that if objection had been made at the time, I would have directed the government to desist from that inquiry, without prejudice to the possibility that the government might have had some valid ground—as, for example, rehabilitating Mr. Tyahla if his credibility were challenged—at a later time in the case.

At the point at which the testimony was proffered and was pursued, I think it was hazardous testimony which should not have come into the case.

In saying that it is hazardous testimony, what I have in mind is the language of the court of appeals in *Gullo.*

> The guilty plea to a conspiracy charge carries with it more potential harm to the defendant on trial [i.e., more potential harm than a guilty plea to a substantive count] because the crime, by definition, requires the participation of another. The jury could not fail to appreciate the significance of this and would realize, as the court said in a similar case, *United States v. Harrell,* 436 F.2d 606, 614 (5th Cir.1970) that "it takes two to tango."

502 F.2d at 761 (footnote omitted).

I conclude, therefore, that at the time Mr. Tyahla was in fact questioned about the guilty plea, the inquiry was inappropriate, and on timely objection, would have been curtailed.

Now, we have here both the failure to object contemporaneously, and the fact that in the course of time, instructions which are

acknowledged to be appropriate instructions, in the sense of stating the syllabus properly, were given.

The effective question is whether either because there was no timely objection, or because an appropriate instruction was given, both in the course of trial and during the charge, or for both reasons, the potential for prejudice, if any, was dispelled, and hence, no ground for a new trial is presented.

If this were a case in which the government had a proper reason for inquiring about the guilty plea at the time that inquiry was made, then an instruction which directed the jury not to regard the guilty plea as substantive evidence, but to consider it only as it affected, for example, the question of the witness' credibility, could be looked to with at least some reliance.

Here, however, we have a situation in which, as I have considered the record, there was not in my judgment any proper ground at the time the inquiry was made for making the inquiry into Mr. Tyahla's guilty plea.

Under those circumstances, I think defendant Calafati is on sound ground in contending that the appropriate instructions were in a sense wide of the mark, that is to say, there were instructions which told the jury not to consider the guilty plea by Mr. Tyahla as substantive evidence against the defendants on trial, but gave the jury no guidance as to what its proper utility was.

Under those circumstances, so it seems to me, the hazard that the court of appeals is so concerned about in *Gullo* can't be said to have been fairly dissipated. That hazard, to repeat, was that, as the court of appeals put it in *Gullo*, 502 F.2d at 761 (citation omitted), "The crime by definition requires the participation of another. The jury could not fail to appreciate the significance of this and would realize, as the court said in a similar case, that 'it takes two to tango.'"

Under these circumstances, so it seems to me, the unguarded admission of the Tyahla plea on the first day of Mr. Tyahla's testimony, not dealt with by instructions until the following day, and even then, not in a way that would give the jury some firm alternative and permitted use for the testimony, doesn't cure the difficulty.

Is the error here which I perceive one which is to be scotched by reliance on the fact that there was no contemporaneous objection? In most circumstances, courts depend on counsel promptly to voice objections to perceived errors, whether modest or of considerable significance. But it is, of course, common ground that errors of major consequence may require remedial action by a court at whatever point the error is identified, and here I think the error was one of potentially major consequence. Whether the error worked to the actual prejudice of Mr. Calafati, or his co-defendant, Mr. Golden who was also convicted, is, of course, something I have no way of determining on the record as it stands, and no way of developing a further record on by way of amplification.

It seems to me inappropriate, where the error is perceived by the court to be of this magnitude, to place on the defendant the burden of demonstrating prejudice where in the nature of things neither the defendant could prove prejudice, nor the government could prove the absence of prejudice.

I am satisfied that there was real potential for prejudice, and a potential not dissipated by instructions which were in form entirely proper, but which in the nature of things could not cover the whole ground because they couldn't sufficiently advise the jury of a proper use for evidence which I now conclude should not have come into the case at all, at least at the time at which it was proffered.

I have considered whether this is a case in which I could conclude the evidence of guilt is so overwhelming that it would be fair to say that the conjectured possibility of prejudice could be ignored.

I cannot fairly, responsibly come to that conclusion. My own personal judgment, on the basis of the testimony as I heard it

presented, is that had I been a member of the jury, I would have joined the jury in finding Mr. Calafati guilty and in finding Mr. Golden guilty. I'm satisfied that the government had a very, very strong case against both of those defendants; I'm also satisfied that the government's case was much weaker against the third defendant, Mr. Garifola, who was, in fact, acquitted by the jury.

But though I find the government's case to have indeed been a strong one against the two defendants who were convicted, I'm not prepared to say that this record, minus the challenged plea of guilt of Mr. Tyahla's, would necessarily have led to the same result.

The trial was a complex one and a hotly contested one with several untidy aspects. I think it would be inappropriate for me to conclude that the verdicts arrived at are unassailable, notwithstanding what I here conclude was an error on my part in not addressing firmly the question of the Tyahla plea of guilty, either *mea sponte* when it was first proffered without objection, or when a day later defense counsel moved for a mistrial.

I conclude, in short, that the interests of justice impel granting Mr. Calafati's motion for a new trial on the ground which I have discussed, namely, the inappropriateness of the introduction of the Tyahla guilty plea at the time it was introduced.

Accordingly, I will enter an order setting the verdict aside and directing a new trial in Mr. Calafati's case. There is no such motion before me with respect to Mr. Golden: his case is now on appeal to the court of appeals, and I think, accordingly, I have no power in the premises with respect to Mr. Golden's case at this time.

I would, however, request Ms. Staton and Mr. Whitt to advise counsel for Mr. Golden, and also advise the court of appeals, of my disposition of Mr. Calafati's motion, so that whatever action may be appropriate may be taken in the court of appeals with respect to Mr. Golden's case.

In view of my disposition of the motion on the ground discussed, there is no occasion for me to address other possible grounds, including the particular one that was briefed for today's hearing but not argued.

I want to thank counsel for their assistance in this complex matter.